Nicholas K. Lagemann
**McELROY, DEUTSCH, MULVANEY**
**& CARPENTER, LLP**
1300 Mount Kemble Avenue
Morristown, NJ 07962-2075
Telephone: (973) 993-8100
Fax: (973) 425-0161
E-Mail: NLagemann@mdmc-law.com
*Attorneys for Argo Innovation Labs, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARGO INNOVATION LABS, INC., a British Columbia, Canada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CELSIUS NETWORKS LENDING, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Argo Innovation Labs, Inc. ("Argo"), by its attorneys, alleges for its Complaint against Defendant Celsius Network Lending, LLC ("Celsius") the following:

### INTRODUCTION

1. This case arises from Celsius' flagrant refusal to pay for services performed by Argo and Celsius' improper attempt to terminate the parties' agreements to avoid paying for Argo's services going forward. Celsius, having received the benefit of Argo's services, believes it can go it alone without paying Argo the fees it is entitled to receive over the life of the agreements. Celsius is wrong; it remains bound to the parties' agreements and its conduct is in clear breach of its contractual obligations. Accordingly, Argo is entitled to relief to enforce the parties' agreements and to remedy Celsius' breaches.

2. Argo and Celsius both are engaged in the cryptocurrency business, but in different spaces. Argo mines cryptocurrency and provides blockchain networking services, whereas Celsius is a cryptocurrency financial services company. In late 2020, however, during negotiations with Argo over financing to acquire cryptocurrency mining computers, Celsius decided it wanted to participate in cryptocurrency mining and sought Argo's assistance. Those discussions led to the Managed Cryptocurrency Mining Services Agreement dated November 2, 2020 (the "Celsius MSA"), which serves as a master agreement for separate Statements of Work that would describe the specific cryptocurrency mining services Argo would provide and the fees Celsius would pay. (Celsius MSA §§ 2, 3.)

3. Also on November 2, 2020, Argo and Celsius entered into Statement of Work No. 1 ("SOW 1"), pursuant to which Argo agreed to "manage [for Celsius] all manner of activities related to the mining cryptocurrency, namely Bitcoin, . . ." related to thousands of mining rigs (the "Celsius Rigs") for a minimum term of 24 months. In simple terms, a cryptocurrency mining rig is a high-powered, customized computer that engages in complex mathematical tasks to verify cryptocurrency transactions. A cryptocurrency miner is paid in cryptocurrency for verifying transactions. Thus, the Celsius MSA and SOW 1 were meant to operate as follows: Argo would manage the Celsius Rigs, which would operate in "mining pools" selected by Argo, each Celsius Rig would receive a payout in cryptocurrency for its successful mining activities, and Argo, in turn, would be paid a percentage of the payout made to each Celsius Rig. (See SOW 1 § 3.)

4. In early 2021, Argo began managing the Celsius Rigs pursuant to SOW 1 and on March 11, 2021, Argo sent Celsius an invoice for February services (the "March Invoice"). Celsius did not pay the invoice. Instead, during a phone call on March 16, Celsius asked to

cancel the Celsius MSA and SOW 1.  Then, one day later, without any notice to or consent by Argo, Celsius unilaterally instructed the company hosting the Celsius Rigs to redirect those rigs from the mining pool selected by Argo to another mining pool.  By doing so, Celsius made it impossible for Argo to determine the payments made to Celsius for the cryptocurrency transactions being verified by the Celsius Rigs and thereby made it impossible for Argo to provide the services and to calculate the fees due under SOW 1.

5. By letter dated March 19, 2021, Argo explained to Celsius that switching mining pools and other associated conduct by Celsius breached Celsius' obligations under the Celsius MSA and SOW 1.  Rather than responding to the claims of breach or curing the breach identified, Celsius instead sent a letter dated April 12, 2021 purporting to terminate the Celsius MSA and SOW 1.  However, under the clear language of the agreements, Celsius has no grounds to terminate the Celsius MSA or SOW 1, and it is apparent that since Argo has now set up the Celsius Rigs for Celsius' benefit, Celsius wants to keep for itself all amounts earned through the Celsius Rigs.  Such conduct is in clear and flagrant violation of Celsius' contractual obligations.

6. Also on April 12, 2021, Argo (through counsel) wrote to Celsius reiterating that there were no grounds to terminate the Celsius MSA or SOW 1 and noting Celsius' breach of contract for failure to pay the March Invoice.  Argo demanded payment of the March Invoice and gave Celsius until April 19 to pay, but to date, Celsius has failed to make payment.

7. Accordingly, in this action, Argo seeks:  (i) a declaration that the Celsius MSA and SOW both remain in full force and effect and that Celsius has a continuing duty to pay the amounts provided for therein for the duration of both agreements and (ii) damages and all other available relief for Celsius' breaches of contract.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff Argo Innovation Labs, Inc. is a corporation organized under the laws of the province of British Columbia, Canada headquartered in Vancouver, British Columbia, Canada. Its address is 700-401 West Georgia Street, Vancouver, BC, V6B 5A1, Canada.

9. Defendant Celsius Networks Lending LLC is a Delaware limited liability company headquartered in New Jersey. Its address is 221 River Street, 9th Floor, Suite 9129, Hoboken, NJ 07030.

10. Argo invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1332(a)(2), which confers jurisdiction upon this Court over this action based on diversity of citizenship between citizens of a state and citizens or subjects of a foreign state. In this instance, pursuant to 28 U.S.C. §1332(c)(1), Argo is a citizen of Canada and Celsius is a citizen of New Jersey and Delaware, and so there is complete diversity. The amount in controversy in this action is over $75,000. The unpaid March Invoice alone is for $85,132.17, and the damages from Celsius' improper attempt to terminate, which will be proven at trial, are several million dollars.

11. This Court has personal jurisdiction over the Defendant based on Celsius' residence, presence, transaction of business and contacts within this District including its headquarters in this District in Hoboken.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Celsius maintains its principal place of business in this District, and at all times conducted substantial business herein.

## FACTUAL ALLEGATIONS

**A.     Cryptocurrency Mining**

13.     Cryptocurrency is a form of electronic currency.  Cryptocurrency mining essentially involves mathematically verifying transactions to confirm that cryptocurrency users are not cheating by trying to spend the same coin more than once.  Blockchain networks are the principal means of verifying transactions.  Once miners have verified a cryptocurrency transaction, they are eligible for payment in cryptocurrency, in this case Bitcoin, which is one of the available cryptocurrencies.  However, in order for a miner to receive payment, the miner must be the first to arrive at the correct mathematical verification.  Put simply, a miner earns money by being the first to solve the mathematical verification problem for each block of cryptocurrency transactions.

14.     Cryptocurrency mining requires powerful computer equipment in order to perform the necessary calculations at the speed required in order to be the first miner to arrive at the right answer and to receive the cryptocurrency reward.  These computers, called mining rigs, are hosted by commercial providers who physically host and provide electric power to the computers.

15.     Cryptocurrency mining pools allow miners to pool together their computing resources and then split the rewards for successful mining.  Different pools have different rules and different pools can be more or less transparent than other pools.  For example, some mining pools do not allow non-members to view the transactions being verified; in other words, it is extremely difficult for an outsider to audit what is happening in those pools.  The various pools have different likelihoods of success (pools with larger computing power, effectively deployed,

are more likely to arrive at the right answer first and receive the reward).  Different pools also have different fee structures for members..

**B.      The Agreements between Argo and Celsius**

     **1.    The Agreements Reflect an Intent to Be Bound**

16.     On November 2, 2020, Argo and Celsius entered into the Celsius MSA, a true and correct copy of which is attached hereto as **Exhibit A**.  Under the agreement, Argo agreed to manage certain cryptocurrency mining activities.  (Celsius MSA at 1.)  The same day, Argo and Celsius entered into SOW 1, a true and correct copy of which is attached hereto as **Exhibit B**.  SOW 1 details specific services Argo agreed to provide and the percentage-based method of calculating payment to Argo for those services.  (SOW 1 §§ 2, 3.)

17.     The Celsius MSA and SOW 1 constitute the entire agreement between the parties related to the services to be provided under SOW 1 (Celsius MSA § 8i), and they are to be "construed, interpreted, and governed by the laws of the state of Delaware and the federal laws of the United Sates." (Celsius MSA § 8j).  Together, the terms of the Celsius MSA and SOW 1 – which incorporate each other (*see* Celsius MSA § 1(a) and SOW 1, at 1) – are definite and clearly define the services Argo is to provide and the payments Celsius is to make for those.

18.     The parties reduced their agreements to writing and signed both agreements to be effective on the same day, evidencing their intent to be bound.  (Celsius MSA, at 7; SOW 1, at 3.)  The promise to perform by Argo and the promise to pay by Celsius are adequate legal consideration.  (SOW 1 §§ 2, 3.)

     **2.    Key Terms of the Agreements**

19.     The Celsius MSA provides that it "is a master agreement for the performance by Argo of those managed cryptocurrency mining services (the 'Services') as may be agreed upon by the parties from time to time . . . ." (Celsius MSA § 1(a).)  This agreement further provides

that "Argo will use reasonable commercial efforts to provide the Services in accordance with the applicable Statement of Work in a manner that reflects the highest and best application of technology and skill currently existing in this domain . . ." and that "Celsius will provide good faith co-operation to assist Argo in performing the Services." (*Id.* §§ 2(a) and (b).) The cooperation Celsius agreed to provide is set forth in Section 2. (*See id.* § 2(b).)

      20.      Regarding fees, the Celsius MSA provides:

> The Services provided by Argo will be at the pricing set forth in the applicable Statement of Work. In the event a Statement of Work does not reference any specific pricing, such Services will be performed at Argo's standard rates set out in or attached to a Statement of Work. Celsius is not entitled to any further consideration for the Services provided by Argo to Celsius.

(Celsius MSA § 3(a).)

      21.      The Celsius MSA commenced on November 2, 2020 and continues until "the expiration of the last Statement of Work, including any renewal or extension thereof." (Celsius MSA § 7(a).) The Celsius MSA further provides that "[e]ach Statement of Work will remain in effect until (i) it has expired on its own terms, (ii) its Services authorized thereunder are completed, or (iii) it is terminated by either party as provided herein." (*Id.* § 7(b).) Further, the Celsius MSA provides in relevant part:

> This Agreement or any Statement of Work will terminate in accordance with terms of any Statement of Work in place however, prior to expiry or completion of a Statement of Work, this Agreement and all ongoing Statements of Work may be terminated in the following manner: (i) in the event the other party fails to perform any obligation required to be performed under this Agreement or a Statement of Work and such failure is not corrected within 30 days from receipt of written notice advising of such failure from the other party . . . .

(*Id.* § 7(c).)

      22.      SOW 1 provides that "Argo will manage all manner of activities related to the mining of cryptocurrency, namely Bitcoin" for the Celsius Rigs. (SOW 1 § 2.) SOW 1 also sets out the method for calculating the fees payable to Argo. (*Id.* § 3(a).) SOW 1 further provides

the requirements for invoicing and payment; under the agreement, invoices are payable within thirty days. (*Id.* § 4(b).)

23. The minimum term of SOW 1 is 24 months, and the term began to run in February 2021, when the Celsius Rigs were delivered to the hosting company. (SOW 1 § 1(a).) SOW 1 provides that Celsius may terminate early for two reasons only (*see* SOW 1 § 1(b)), and neither event has occurred. SOW 1 therefore is still in effect and the parties are obligated to perform thereunder.

**C.     Celsius' Multiple Breaches of Contract**

24. SOW 1 requires Argo to provide certain specified services, all of which Argo has performed fully. Critically, among other things, Argo has performed fully the specific services detailed in SOW 1. (*See* SOW 1 §§ 2(b)(iii), (b)(v), (c).) As a result of Argo's performance, Celsius has been earning payments for the cryptocurrency transactions being verified by the Celsius Rigs.

25. Despite Argo's performance, Celsius has refused to pay Argo for the work already done under SOW 1 and is trying to get out of its continuing obligations under the agreements by trying to terminate with no factual or legal grounds.

26. On March 11, 2021, Argo issued Celsius the March Invoice, which was for $85,132.17, a true and correct copy of which is attached hereto as **Exhibit C**. On March 16, 2021, representatives of Celsius contacted Argo by phone and requested canceling the Celsius MSA and SOW 1. Argo refused Celsius' improper request.

27. The next day, on March 17, 2021, Celsius without notice to Argo instructed the company hosing the Celsius Rigs to move those rigs from one mining pool to another. In so doing, Celsius moved the Celsius Rigs from a pool where Argo could monitor the Celsius Rigs (and therefore calculate the amounts owed under SOW 1) to a pool where Argo no longer has

such visibility (and therefore could not properly calculate the fees Celsius was required to pay under SOW 1). Moreover, as part of the services performed under SOW 1, Argo designed a proprietary cryptocurrency mining dashboard that required mining from the pool originally selected for Celsius by Argo under SOW 1. This proprietary dashboard designed for the Celsius Rigs could not be used with the new mining pool. Given Celsius' blatant breaches, by letter dated March 19, 2021, Argo notified Celsius that changing mining pools was "in contravention of the [Celsius MSA and SOW 1] and was not authorized by Argo." A true and correct copy of the March 19 letter is attached hereto as **Exhibit D**. Celsius failed to respond to Argo.

28. Rather than cure its breaches, on April 12, 2021, Celsius sent a letter to Argo purporting to terminate the Celsius MSA and SOW 1. A true and correct copy of the letter is attached hereto as **Exhibit E**. The letter makes several unfounded allegations, all of which Argo denies. Notably, nowhere does the letter state that either of the two conditions that allow for early termination of SOW 1 (*see* SOW 1 § 1(b)) have occurred.

29. Also on April 12, 2021, Argo, through counsel, sent a letter to Celsius explaining that Celsius had no grounds to terminate the Celsius MSA or SOW 1 and that the March Invoice remained outstanding. A true and correct copy of Argo's April 12 letter is attached hereto as **Exhibit F**. In that letter, Argo informed Celsius that if it did not pay the March Invoice by April 19 that Argo would be "forced to take the necessary legal actions to ensure" the parties' agreements are upheld. Celsius has yet to pay the March 11 invoice, which is now long overdue. (*See* SOW 1 § 4(b).)

## COUNT I
## DECLARATORY JUDGMENT

30. Argo repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

9

31. Argo seeks relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). This act allows parties to sue for a judicial declaration in order to declare and settle the rights and obligations of the parties. Argo and Celsius signed contracts for cryptocurrency mining services – the Celsius MSA and SOW 1. They agreed and intended to be bound, the terms were sufficiently definite, and there was valid legal consideration. Their agreement was reduced to a signed writing.

32. The agreements contain specified requirements before they can be terminated during the initial term which runs until February 2023. They contain a cure period for any alleged breaches. They contain requirements for payment of invoices. They grant Argo the right to manage the cryptocurrency mining operations of the Celsius Rigs, including the selection of mining pools.

33. Argo has fully performed its obligations under the agreements and neither of the two specified occurrences that would allow for termination by Celsius prior to February 2023 have occurred. Celsius, therefore, has no grounds to terminate the agreements and its attempt to do so is invalid and improper.

34. Argo is entitled to the agreed upon payment for its services in the agreed upon timely fashion for the agreed upon term of the contract. Celsius is not entitled to back out of its agreement during the initial term for any reasons other than those it agreed to in the termination clause.

35. Therefore, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), Argo seeks a declaration that the contract between Argo and Celsius remains in effect and that Celsius is and remains obligated to make timely payments according to the terms of the

contract until Celsius has paid for Argo's services through the initial term of the contract, at least until February 2023, unless the termination events listed in the contract occur.

## COUNT II
### Breach of Contract

36. Argo repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

37. This count arises under the common laws of the State of Delaware, pursuant to the choice of law provision in the parties' contract. (Celsius MSA § 8j.)

38. Argo and Celsius signed contracts for cryptocurrency mining services – the Celsius MSA and SOW 1. They agreed and intended to be bound, the terms were sufficiently definite, and there was valid legal consideration. Their agreement was reduced to a signed writing. Celsius and Argo are bound by the Celsius MSA and SOW 1. Argo has performed the services required under the agreements.

39. Celsius has breached the agreements by, among other things (i) purporting to terminate the contract without a valid basis, (ii) purporting to terminate the contract without giving Argo an opportunity to cure any alleged failures by Argo, (iii) switching mining pools without Argo's consent, and (iv) failing to pay Argo for its services – specifically the March Invoice – in a timely manner.

40. Celsius' breaches of contract have directly and proximately caused Argo to suffer damages in the amount of its unpaid fees and will continue to directly and proximately cause Argo damages for the amounts due under the contract for the term of SOW 1, at least until February 2023, in an amount to be proven at trial and that is expected to be millions of dollars.

## PRAYER FOR RELIEF

WHEREFORE, Argo respectfully requests that this Court:

1. Enter a judgment in Argo's favor against Celsius on all counts;

2. Declare that the contracts between Argo and Celsius are in full force and effect and that Celsius is bound by its obligations to Argo for the term of the contracts including *inter alia* the obligation to pay Argo for its services in a timely fashion;

3. Order Celsius to pay damages to Argo in an amount to be proven at trial;

4. Award Argo its attorneys' fees and costs of suit;

5. Award Argo any other or further relief as this Court deems just and proper.

## JURY DEMAND

Argo demands a trial by jury on all issues so triable.

Dated:  April 20, 2021

Respectfully submitted,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

By:  /s/Nicholas K. Lagemann
*Attorneys for Plaintiff,
Argo Innovation Labs, Inc.*

Nicholas K. Lagemann
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
Morristown, NJ 07962-2075
Telephone: (973) 993-8100
Fax: (973) 425-0161
E-Mail: NLagemann@mdmc-law.com

Scott T. Nonaka
S. Patrick Kelly
*pro hac vice* applications forthcoming
**SIDLEY AUSTIN LLP**
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Fax: (415) 772-7400
Email:  snonaka@sidley.com
Email:  patrick.kelly@sidley.com

*Attorneys for Plaintiff*
*Argo Innovation Labs, Inc.*